# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| RICKEY LEE HALTON | CIVIL ACTION NO. 06-1055 |
| VS. | SECTION P |
| ROBERT RACHAL, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING AND REPORT AND RECOMMENDATION

Before the court is a civil rights (42 U.S.C. §1983) complaint filed *in forma pauperis* on June 23, 2006 by *pro se* plaintiff Rickey Lee Halton. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the Steve Hoyle Rehabilitation Center (SHRC), Tallulah, Louisiana and he complains of inadequate medical attention at that facility. He names Assistant Warden Robert Rachal, staff physician Dr. José Singson, Nursing Director Damon Williams, Nurse Marilyn Newton, and Director of Legal Services, Sharon Wilson as his defendants. He prays for compensatory damages, punitive damages, and injunctive relief. By separate motions, he also seeks a preliminary injunction or temporary restraining order [Doc. No. 9], a declaratory judgment and second preliminary injunction [Doc. No.10], and certification of this matter as a class action [Doc. No. 12]. Plaintiff also moves for appointment of counsel[1] [Doc. No. 13].

---

[1] As this is not among the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, the ruling thereon is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

1

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons, petitioner's motion for appointment of counsel is DENIED, and it is recommended that the complaint and associated motions be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and because they fail to state  claims for which relief may be granted.

### *Statement of the Case*

On September 2, 2004 plaintiff complained of hip and joint pain. He was apparently examined by SHRC staff physician Dr. Singson who prescribed "Ibus." [2]  Approximately one month later, in October 2004, plaintiff lost feeling and strength in his left leg and the ability to walk evenly. He reported this development to Dr. Singson who sent plaintiff for further examination at the E.A. Conway Hospital (EACH) in Monroe.  X-rays, an MRI, and electrical analysis revealed an injury to a disc in plaintiff's back. This disc injury caused pain and loss of mobility.  However, physicians at EACH did not recommend surgery because in their opinion the injury "...wasn't that bad."

On January 2, 2005, plaintiff placed another sick call complaining that he was experiencing pain both while sitting and while standing. He was apparently examined by the physician or medical staff who increased the dosage of ibus to 600 mg.

---

[2] "Ibus" are nonsteroidal anti-inflammatory drugs (also called NSAIDs) and are used to relieve some symptoms caused by arthritis (rheumatism), such as inflammation, swelling, stiffness, and joint pain. Some of these medicines are also used to relieve other kinds of pain or to treat other painful conditions, such as gout attacks; bursitis; tendinitis; sprains, strains, or other injuries; or menstrual cramps. Ibuprofen and naproxen are also used to reduce fever. Non-steroidal anti-inflammatory drugs may also be used to treat other conditions as determined by a physician. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

On February 2, 2005 plaintiff again complained of pain and again an increased dosage (800 mg) of ibus was prescribed.

During the period between March 2005 – August 2005 plaintiff continued to complain of pain to Damon Williams, the SHRC Director of Nursing. Williams advised plaintiff that the nursing department could only provide the treatment ordered by the physician.

On August 7, 2005, plaintiff placed another sick call. He advised Dr. Singson that the current therapy was ineffective and that he remained in pain. On August 10, 2005, plaintiff was given 600 mg of ibus and an injection of some unspecified medication. However, he claimed that this therapy provided no relief.

On September 22, 2005, plaintiff filed Administrative Remedies Procedure (ARP) Grievance #2005-121 [see doc. 1-1, p. 12]. In this grievance plaintiff complained

> My feet hurt – at times overwhelmingly. It is painful for me to walk or run. And any prolonged stationary standing causes them to throb and my lower back to tighten and spasms; then, throughout my entire back. Even in bed just the light pressure of resting them on the mattress is painful, so is the simple act of placing them on the floor while seated. While sleeping I have to position my feet to hang off the bed or elevate them by my ankles. I've visited the Dr. here twice and he prescribed the usual Ibu's along with insoles. Again Ibu's provide no beneficial or reasonable relief. The inserts however do decrease the sensitivity of my feet against the pressure but they are cheap and thin, so the very mild remission of pain is gone as the insole quickly wears. The Dr. said there was nothing else he could do. Again I am only asking to be given a bit more legally mandated medical relief for my infirmity in accords with that in which I would be able to provide for myself as a civilian – and not lavish – only beneficial and reasonable treatment. Also along with this I would like to request that a Dr.'s order be given that would allow me to order outside shoes – boots that provide more comfort, support and would assist and promote better care of my feet (and insoles). And I would like to see a Dr. at Conway to determine the medical condition of them and a duty status be placed in my medical records – no standing.

On October 11, 2005, the ARP was accepted by the SHRC administration who promised

a response within 40 days. [doc. 1-1, p. 13]

Sometime prior to October 17, 2005, the SHRC responded to the ARP. Plaintiff, however, was unable to provide a copy of this response. In any event, on October 17, 2005, plaintiff appealed the denial of his grievance stating in pertinent part,

> In response to ARP 2005-121, you are right in your answer that I have been provided with pain medication (Ibus) and insoles to alleviate discomfort resulting from a pinched nerve. I'm not disputing that. What I am saying is the treatment is not beneficial or lasting. Ibu's are only good for a few days then I quit taking them as they no longer serve any purpose. The insoles are only good for about 2 weeks then they are pressed past effectiveness. They do help but I need them regularly. When I asked about getting another pair I was told no because I already received two pairs. I would need to fill out another sick call form. I do not need my temperature and blood pressure checked – only a pair of 99 cent insoles – that I would gladly provide for myself if they were made available. I think having to spend $5 ... frequently on cheap insoles for what has already been determined to be a perpetual medical problem is not right ...
>
> I feel my treatment is being rendered with institutional constraints and callusness [sic] that prevents the medical staff Dr. here from being true to the degree of professional aptitude they have been endowed with and the resulting lack of proper care is malpractice...
>
> Recently I asked the Dr. if he could treat me with naproxyn/prednisolone.[3] This treatment works great. It was given to me while at Natchitoches by the Dr. there. It brought relief. I was given the naproxyn but the Dr. here refused the

---

[3] Prednisone and prednisolone are corticosteroids (cortisone-like medicines) which are used to provide relief for inflamed areas of the body. They lessen swelling, redness, itching, and allergic reactions. They are often used as part of the treatment for a number of different diseases, such as severe allergies or skin problems, asthma, or arthritis. Corticosteroids may also be used for other conditions as determined by your doctor. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202018.html.

Naprosyn, like "ibus" is a nonsteroidal anti-inflammatory drugs (also called NSAIDs) used to relieve some symptoms caused by arthritis (rheumatism), such as inflammation, swelling, stiffness, and joint pain. *id*, at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

prednisolone. My medical records show arthritis, pinched nerve, pain in hips, feet, lower back and spasms. Ibus do not effectively treat that and insoles only pamper the external symptoms and don't treat the core issue. If the Dr. is callused towards inmates or is following restrictive rules that violate his medical intuition in treatment and will not prescribe a level of care that is not lavish only not general and broad I say that is indifference. I see the medical and administrative responsibilities being fulfilled in the capacity so as not to appear lacking and indifferent but for whatever reasons...

So in closing I am not satisfied with the response. If insoles could be made readily available at reasonable price and occasional treatments of prednisolone [sic] to treat pain and stiffness I would feel resolved. I have been seeking relief complaining of this since 1-2-05. [doc. 1-1, pp. 16-17]

On October 19, 2005, plaintiff was advised by screening officer Sharon Wilson that his appeal had been sent to the Secretary of the LDOC. [doc. 1-1, p. 18] On November 11, 2005, the appeal and ARP were denied. In so doing, the LDOC noted, "The medical care you have received is deemed adequate, appropriate and is ongoing..." [doc. 1-1, p. 19]

Meanwhile, and also on September 22, 2005, plaintiff submitted ARP #2005-123. Therein he stated in part,

Approximately Nov 2004 I experienced a disc/nerve injury in my lower back and I lost all sensation in my left leg and foot. Medical exams showed not much could be done to treat it and it did not warrant surgery. In these exams it was also determined I had developed arthritis which explained all of the pain and stiffness I had been having and still am along with the daily and nightly spasms from the disc injury. Somedays the pain is just discomforting, on others it is oppressive and hurtful to the extent I don't want to partake of the day's routine but since I am not allowed the leisure of staying confined, depressingly I endure the day. I've been prescribed Ibu's several times. That treatment has never provided any real beneficial or lasting relief. It is ineffective. At another institution they provided treatments of Prednizone and Naproxyn. These were not lasting medications but they did provide some welcomed and comforting rest from the ailments. I do not expect lavish health care in prison but only to be adequately and properly medicated – the same as I could provide for myself as a civilian. I am requesting something a little more generous be administered than Ibu's. Everyday is not a bad day for me so I don't require constant medication. (I know meds are pricey.) So I'm just requesting to have the meds that are satisfactorily able to treat my

pain-stiffness-spasms. Also I would like a duty-status that reflects no heavy lifting or bending. [doc. 1-1, p. 9]

On October 11, 2005 plaintiff received a response from Ms. Wilson, the ARP screening officer. She advised,

> You currently have a Request for Administrative Review at the institutional and/or headquarters level, the request you submitted for administrative remedy that was received in this office on October 10, 2005 will be logged into the ARP system. (ARP-SHRC-2005-123) This request will not be handled until all previously accepted requests have been completed at the institutional and/or headquarters level. [doc. 1-1, p. 10]

On December 20, 2005, Ms. Wilson submitted a formal rejection of ARP SHRC-2005-123 which indicated that the grievance had been filed too late. [doc. 1-1, p. 11]

Sometime in January/February 2006 plaintiff was again provided an x-ray examination; however, the results of the x-ray were not provided to him. The medical staff continued to provide ibus for his pain.

In April 2006 plaintiff submitted a sick-call. Dr. Singson examined him and advised that all he could do was continue to prescribe ibus. Plaintiff was advised that he would have to be transferred to another prison to obtain any stronger medication for pain. Plaintiff requested that he be sent to EACH for further examination and treatment. Dr. Singson indicated to plaintiff that his request would be honored.

On May 11, 2006, plaintiff requested another sick-call. He was apparently examined by the physician or his staff and ibus were provided.

On June 2, 2006, plaintiff submitted an informal written complaint to Assistant Warden Robert Rachal. Plaintiff complained of pain and requested that he be sent to EACH. Plaintiff

received no response.

On June 6, 2006, plaintiff inquired whether or not an appointment had been made for him at EACH. Nurse Newton advised plaintiff, "If the doctor prescribed it then it was done." She otherwise refused to investigate whether or not an appointment or referral had been made.

Plaintiff completed his complaint on June 15, 2006. On that day he maintained that he still had not been provided "...adequate or relieving treatment." He complained, "Even in my appointed position as librarian it is difficult; as sitting for long periods of time cause my spine to stiffen and my legs to go numb. My condition is degenerating on a progressive basis." Plaintiff signed his complaint on June 20, 2006, and it was received and filed on June 23, 2006. As stated above, plaintiff prayed for "...punitive, compensatory, and injunctive relief."

On July 27, 2006, plaintiff submitted an unsigned "Declaration in Support of Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order" accompanied by a "Memorandum or Law in Support of Motion for a TRO and Preliminary Injunction." He alleged that he is entitled to a temporary restraining order and a preliminary injunction providing the following relief, "... Dr's orders for shoes, a double mattress, insoles [without] having to pay $3 to receive a pair each time as they are already prescribed, some form of compassionate immediate treatment to alleviate sore joints, back, and foot pain..." [doc. 9-1, p. 3]

On the same date he submitted an unsigned "Declaration in Support of Motion for a Preliminary Injunction and or a Declaratory Judgement for the Provision of Access to Adequate Legal Resources and Inmate Counsel." [doc. 10-1] In this pleading plaintiff requested an order directing the defendants to provide "... inmate counsel, legal reference material, access to the Lexis Nexis and the ability to make copies as these things are ordered by law and proper and

fitting to ensure inmates have the continued and unimpeded right to access the courts." [*id.*, paragraph 1] He also requested (1) that the Warden rescind his rule that inmates may not assist one another with legal work or, in the alternative provide adequate inmate counsel; (2) adequate legal materials; (3) access to Lexis Nexis; (4) inventory and inspection of the law library; (5) that legal materials on the list of relevant legal materials recommended by the American Association of Law Librarians be provided; (6) that the hours of the library run concurrent with the hours of the hobby shop; and, (7) that library hours be posted and respected. [id., paragraph 41] Plaintiff then requests appointment of counsel. [id., paragraph 42] In support of these motions plaintiff submitted copies of his Inmate Banking Records dated July 6, 2006 [doc. 10-2, pp. 1-10]; the declaration of inmate Robert Letell dated July 22, 2006 (the declaration complains of inadequacies of the SHRC law library) [doc. 10-2, pp. 11-13]; the denial of Letell's ARP in grievance SHRC-2006-58 [doc. 10-2, p. 14]; the statement of inmate Byron Signorelli dated July 20, 2006 (the statement also complains of the inadequacies of the SHRC law library and inmate counsel) [doc. 10-2, p. 15]; the statement of inmate Anthony J. Barrios dated July 23, 2006 (the statement also complains of the inadequacies of the SHRC law library and inmate counsel) [doc. 10-2, p. 16]; the statement of inmate James A. Light, II, dated July 22, 2006 (the statement also complains of the inadequacies of the SHRC law library and inmate counsel) [doc. 10-2, pp. 17-18]; the statement of inmate Tony A. Wagner, dated July 23, 2006 (the statement also complains of the inadequacies of the SHRC law library and inmate counsel) [doc. 10-2, p. 19]; and, a copy of Inmate Posted Policy #36S concerning photocopying of authorized documents [doc. 10-2, p. 20]

On August 4, 2006, plaintiff filed a "Motion to Classify as a Class Action Plaintiff's

Request for Provision of Access to Adequate Legal Material and Competent Inmate Counsel."

[doc. 12-1, p. 1] Therein he alleged that he anticipates that he will be released from custody on

October 2, 2006, and thus seeks class action certification to prevent his civil rights claim from

being mooted. [*id.*, paragraphs 3 and 4] On the same date plaintiff filed a "Motion for

Appointment of Counsel." [doc. 13-1]   Plaintiff filed in support of this motion a declaration

[doc. 13-2] and a memorandum [doc. 13-3].

   In his original complaint, plaintiff outlined his theories of liability with respect to each of

the defendants.  According to the plaintiff, (1) Assistant Warden Rachal is liable because he

knew of plaintiff's condition and because he is responsible for the policies that deny or delay

prisoner's access to treatment; (2) Dr. Singson is liable because "[a]s a doctor he knows

[plaintiff's] condition is painful and that [plaintiff] was in need of relieving medical care ... and

failed on numerous occasions to prescribe any beneficial relief..." Singson's "... failure to

exercise medical judgment caused [plaintiff] to be subjected to unnecessary pain and suffering..."

; (3) Nursing Director Williams is liable because "... he is responsible for the extraordinary delay

in co-ordinating transportation and setting appointments... [h]is negligence in doing so or delay

in securing such a distant appointment ... contributed to [plaintiff's] suffering; (4) Nurse Newton

is liable because "...if she had checked to see if an appointment was ... made the error in not

exercising Dr.'s prescribed orders could have been detected then..."  Further, plaintiff claims that

Newton's "... negligence violated [his] ... rights."; and, finally, (5) Legal Services Director

Wilson is liable because "... she further contributed to [plaintiff's] suffering by improperly

delaying then denying [his] valid ARP on unfactual [sic] and frivolous grounds thus effectively

preventing [him] from pursuing relief.  Her actions in combination with other negligent acts of

defendants denied [him] ... medical care and or a remotely possible administrative remedy. Her negligence violated [plaintiff's] ... rights." [doc. 1-1, p. 8]

## *Law and Analysis*

### *1. Appointment of Counsel*

Plaintiff requests court-appointed counsel to assist him in this litigation. Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.

In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: (1) the type and complexity of

the case; (2) the plaintiff's ability to adequately present and investigate his case; (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

In his civil rights complaint, plaintiff alleged that the defendants denied him prompt and appropriate medical care. This claim is typical of those often asserted in civil rights litigation and is not complex. As can be seen from the complaint and associated pleadings already filed, this plaintiff has adequately presented not only the contours of his complaint but also the intricate details of his claims, and therefore the appointment of counsel would benefit neither plaintiff nor the court at this time. Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel [Doc. No. 13] is hereby **DENIED** because the allegations contained in the complaint and plaintiff's motion do not demonstrate "exceptional circumstances" which would warrant the appointment of counsel. Moreover, plaintiff's request is **DENIED** because he has failed to demonstrate any effort to secure counsel on his own behalf.

*2. Initial Review Pursuant to 28 U.S.C. §§1915 and 1915A*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a

plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint and his subsequent associated pleadings have been reviewed. Plaintiff's pleadings provide a detailed description of the factual basis of his claim along with his theories of liability with respect to each named defendant. Further amendment would serve no useful purpose.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

### 3. Deliberate Indifference

Plaintiff claims that he has been denied adequate medical care. Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a

significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that the defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also

*Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's allegations of fact have been accepted as true for the purposes of this Report. The complaint reveals that on each occasion that plaintiff complained about a medical condition to the defendants, he was afforded some medical treatment.[4]

Plaintiff, of course, disagrees with the diagnoses made by the defendants and the efficacy of the treatment provided, however, his disagreement with diagnosis and treatment is insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).[5] Finally, plaintiff's theories of liability with respect to each defendant are also fatal to his claims.[6]

---

[4] As shown above, plaintiff's first reported sick call was September 2, 2004. On that occasion he was examined by a physician and pain medication was provided. [doc. 1-1, p. 5, paragraph 1] When he complained of numbness and loss of leg strength on October 4, he was sent to the EACH where he was again examined and diagnosed. Based upon the examination, it was concluded that surgery was not called for. [id., paragraphs 2-4] When plaintiff next complained of pain on January 2, 2005, the dosage of his pain medication was increased. [id., paragraphs 5-6] Again, when he continued to complain of pain in February, 2005, the dosage of his pain medication was increased. [id., paragraph 7] On those occasions between March - August, 2005 when plaintiff complained of pain to the director of nursing, he was advised that only the physician could alter the treatment plan. [id., paragraph 8] When plaintiff complained of pain in August, 2005, he was medicated for the pain. [id., paragraphs 9-10] Plaintiff was sent for x-rays in January and February, 2006 and provided pain medication throughout this period. [id., paragraphs 17-18] His April 2006 complaint was addressed by the physician who provided pain medication. [id., paragraph 21] When he complained of pain in May 2006 he was again examined by a physician and prescribed pain medication. [id., paragraphs 19-20] In a pleading filed on July 27, 2006 plaintiff admits to being afforded on-going pain treatment by the defendants who continue to provide ibus. He also admitted to being afforded additional diagnostic x-ray examination on July 10 and pain injections on July 10. [doc. 9-1, paragraph 11]

[5] Plaintiff's ARPs reveal his disagreement with Dr. Singson over his choice of one NSAID over another. [doc. 1-1, p. 9, ARP No. 2005-123] In his other ARP he concurred with Singson's prescription of insoles but merely disagreed with the method of supplying those orthotic devices. [id., p. 12, ARP No. 2005-121]

[6] Plaintiff, for example, faults Dr. Singson for his "failure to exercise medical judgement..." and he faults Nursea Williams Newton of "negligence." But, as shown above, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Plaintiff seeks to visit supervisory liability on Asst. Warden Rachal by alleging his responsibility for policies that deny effective transportation of prisoners for treatment, however, the record establishes that this plaintiff was transported to the EACH on at least two occasions for diagnosis and treatment. Further, his allegation that Rachal is responsible for these policies is merely conclusory and insufficient to warrant the imposition of supervisory liability. With respect to the allegations concerning Ms. Wilson, such allegations fail to state a claim for which relief may be granted. The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct.

In short, the facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims are therefore frivolous and dismissal on that basis is recommended.

### 4. Injunctive Relief

On July 27, 2006, plaintiff filed a Declaration in Support of his Motion for a Preliminary Injunction and Temporary Restraining Order. [doc. 9-1] In his original complaint, plaintiff prayed for injunctive relief, but did not specify the nature of the relief sought. [doc. 1-1, paragraph V] In this declaration, plaintiff seeks specific relief – he asks the court to order the physician to order "... shoes, a double mattress, insoles w/o having to pay $3 ... [and] some form of compassionate immediate treatment ..." [doc. 9-1, paragraph 24]

A movant for a preliminary injunction must demonstrate <u>each</u> of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411,

---

2293, 132 L.Ed.2d 418 (1995), leaves prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substance right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

418-20 (5th Cir.2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976).

Plaintiff simply cannot prevail because he has not demonstrated a substantial likelihood of success on the merits. As shown above, plaintiff has not shown that he is entitled to relief. Plaintiff has shown only that he disagrees with the diagnosis and treatment that he is presently being provided.  It is therefore recommended that his request for injunctive relief [Doc. No. 9 ] be **DENIED.**

### 5. Access to Courts

On July 27, 2006 plaintiff filed a Declaration in Support of a Motion for Preliminary Injunction and Declaratory Judgment raising access to courts claims. [doc. 10-1]  The right of access to the courts assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.  *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials  have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.  See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this

review, fail to demonstrate that the defendants denied him access to the courts as that term is defined in the foregoing cited jurisprudence. As stated above, the Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Clearly, plaintiff has not been denied that right. The record demonstrates that he was able to file a complaint accompanied by a specific statement of claim and supporting exhibits [doc. 1-1, pp. 1-22]; a letter to the Clerk of Court [doc. 5]; a Motion for Leave to Proceed *in forma pauperis* [doc. 7]; Motion for Preliminary Injunction [doc. 9]; Motion for Declaratory Judgment [doc. 10]; supporting exhibits [doc. 11]; Motion to Certify Class Action [doc. 12]; and Motion to Appoint Counsel [doc. 13].

Further, even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right to access the courts, he must still allege facts to establish that he suffered some prejudice as a result of the deprivation. That requirement has long been established by Supreme Court and Fifth Circuit jurisprudence. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). In *Lewis v. Casey*, the Court noted that its prior access to courts jurisprudence "...did not create an abstract, freestanding right to a law library or legal assistance...", and that "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical

sense...". Thus, according to the Court, an inmate alleging the denial of access to the courts based upon the inadequacies of the institution's law library  "... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351.

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any pending or contemplated legal proceeding by any alleged act or omission by any of the named defendants herein. Because plaintiff has presented no fact-specific allegations establishing that he was ever actually prejudiced in connection with any actual or proposed legal proceeding, his claims do not provide a basis for recovery under § 1983. Plaintiff has not shown that the actions of the defendants inhibited him from filing a non-frivolous complaint. His access to court claim, is itself frivolous, and dismissal on that basis is appropriate.

Further, it is clear from the pleadings and exhibits that plaintiff has not completely exhausted administrative remedies with respect to his access to courts claim.[7]  The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, was amended on April 26, 1996 by the

---

[7] Plaintiff has provided proof of his fellow inmate Robert Letell's attempt to exhaust administrative remedies with respect to the access to court claim. [see doc. 10-2, pp. 11-14] However, even assuming that Letell's grievance is sufficient for the purposes of §1997e, the record reflects that his grievance was rejected on procedural grounds by the SHRC administration on July 10, 2006. There is no indication that he thereafter sought review of this decision at the state level by filing a grievance with the LDOC Secretary as required by Louisiana law.  See LSA R.S. 15:1171 *et seq.*; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002); 28:4 La.Reg. 857.  In relevant part, subsection (G)(2)(a) of these regulations governing administrative remedies for prisoners in the custody of the Louisiana Department of Public Safety and Corrections provides: <u>"An inmate who is dissatisfied with the First Step response may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision</u>. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden."  Further, even if Letell did timely seek review of the denial of his grievance, it is clear that the access to courts claim was filed in this court before the review process was completed.

Prison Litigation Reform Act (PLRA). As amended, § 1997e(a) makes the exhaustion

requirement mandatory in prison conditions cases. Section 1997e(a) provides,

> No action shall be brought with respect to prison conditions under section 1983 of
> this title or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

An access to courts claim is a prison condition case and is exactly the type of case which

can best be resolved by the prison officials without resort to judicial action. With respect to

plaintiff's access to courts claim, it appears that he failed to exhaust administrative remedies

before filing this claim as required by 42 U.S.C. §1997e(a). Plaintiff is obviously aware of the

administrative remedy procedure since he filed administrative remedies grievances with respect

to his medical care claims.

Under Federal law, plaintiff must exhaust the administrative remedy procedure before

proceeding herein. The statute provides for no exceptions.[8] The statute precludes any further

action on this access to court claim until it has been fully exhausted LDOC's administrative

remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a)

"plainly requires that administrative remedies be exhausted before the filing of a §1983 suit,

rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing

by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to

provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v.

Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative

---

[8] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that
the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life,</u> whether they involve general
circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation
omitted)"

20

remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures."). It is recommended that Plaintiff's motion for declaratory judgment and injunctive relief [ Doc. No.10] be **DENIED.**

### 6. Class Action

Finally, on August 4, 2006, plaintiff filed a Motion to Classify his Access to Court Claim as a Class Action. [doc. 12-1] In support of this claim he previously provided statements and declarations of fellow inmates concerning perceived deficiencies in the SHRC law library. [doc. 10-2]. As shown above, plaintiff's access to courts claims are frivolous; alternatively, plaintiff has not fully exhausted the available administrative remedies. His request for class action certification should be DENIED.

Accordingly,

Plaintiff's Motion to Appoint Counsel [doc. 13-1] is **DENIED.**

_____**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint (including his prayer for injunctive relief) [doc. 1] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motions for Preliminary Injunction, Temporary Restraining Order, and Declaratory Judgment [docs. 9 and 10] be

**DENIED** and **DISMISSED WITH PREJUDICE;** and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion to Certify Class [doc. 12] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 13th day of September, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE