# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **RICKEY LEE HALTON** | **CIVIL ACTION NO. 06-1055** |
| **VS.** | **SECTION P** |
| **ROBERT RACHAL, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Rickey Lee Halton on June 23, 2006. When he filed this complaint, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he was incarcerated at the Steve Hoyle Rehabilitation Center (SHRC) in Talullah, Louisiana and, among other things, he complained of delayed and inadequate medical care at that facility.[1]

On September 13, 2006, the undersigned authored a Report recommending dismissal of plaintiff's complaint. [doc. 15] On the same day the Clerk received and filed a "Motion for Supplemental Jurisdiction" which had been signed by the plaintiff on September 11, 2006. [doc. 16] On September 14, 2006, the Court construed the pleading as a Motion to Amend Complaint and granted it for the purpose of adding the allegations contained in plaintiff's Memorandum of Law. The court also remanded the matter to the undersigned for a supplemental Report and Recommendation. [doc. 17]

---

[1] On October 4, 2006 plaintiff advised the Clerk of his new mailing address – a post office box in Gilliam, Louisiana. It thus appears that plaintiff is no longer in the physical custody of the LDOC and is clearly no longer incarcerated at the SHRC. [doc. 19]

*Supplemental Statement of the Case*

In his Supplemental Complaint plaintiff claimed the following. On August 31, 2006, he was diagnosed with gout, "... a painful and excruciating condition that was left undiagnosed and untreated for over a great length of time... [t]his neglect permitted his condition to worsen, deprived him of life and subjected him to severe emotional distress and possible bodily injury."

According to plaintiff, "[a] simple blood test which is a standard procedure for the expressed ailments of nausea, joint pain, stiffness was never initiated by medical doctors ... [who] did not prescribe a level of care that is consistent with ordinary skill, care and knowledge of their profession ... Plaintiff was never afforded the kindness of effective treatments or recommended a transfer to a facility that would have enable him to receive such compassionate treatments." He alleged that the physicians did not inform him of the dangers associated with long term Ibus[2] intake, and that the physicians knew of these hazards and should have provided for intermittent discontinuance. He alleged that he suffered "internal injury from long term Ibus intake and joint and kidney injury from long term untreated gout and severe emotional distress." [doc. 16-1, p. 3]

More specifically he claimed that he was examined by Dr. Borcheat, an orthopedist at E.A. Conway Hospital in Monroe. Borcheat concluded that plaintiff was suffering from gout. Based upon the symptoms described by plaintiff, the treating physicians should have ordered a

---

[2] As noted in the original Report and Recommendation, "Ibus" are nonsteroidal anti-inflammatory drugs (also called NSAIDs) and are used to relieve some symptoms caused by arthritis (rheumatism), such as inflammation, swelling, stiffness, and joint pain. Some of these medicines are also used to relieve other kinds of pain or to treat other painful conditions, such as gout attacks; bursitis; tendinitis; sprains, strains, or other injuries; or menstrual cramps. Ibuprofen and naproxen are also used to reduce fever. Non-steroidal anti-inflammatory drugs may also be used to treat other conditions as determined by a physician. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at
http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

blood test which would have revealed the disease much earlier. [*id.*, p. 4]

He also claimed that Drs. Singson and Borcheat should have prescribed more effective pain relieving treatments and that plaintiff should have been transferred to an LDOC facility that would have allowed the use of controlled substances for pain relief. [*id.*]

He claimed that both Singson and Borcheat "failed to adequately respond to [his] symptoms." He claimed that his "pain and condition were deliberately ignored and negligently treated." He claimed that he was not warned of the possible dangers of long term ibus therapy and that now his stool is bloody and he may suffer from internal injuries. He claimed that Singson knew of these dangers yet prescribed ibus for twenty-one months. He claimed that this therapy was discontinued by Nurse Clark in July, but no substitute pain medication has been provided since then. [*id.*]

He claimed that he may have suffered injury to his joints and kidney because the gout went untreated for so long. He concluded by stating, "Their neglect resulted in a painful and propagating condition. Plaintiff has endured 1 ½ years of severe emotional distress and loss of life." [*id.*]

By this Supplemental Complaint, plaintiff seeks to add Dr. Borcheat as a defendant to supplement the original complaint against Dr. Singson.

*Law and Analysis*

*1. Dr. Borcheat*

Plaintiff seeks now to visit §1983 liability on Dr. Borcheat, the orthopedist at the E.A. Conway Hospital in Monroe. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. " *West v. Atkins*,

487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Section 1983 provides in pertinent part, "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..." 42 U.S.C. § 1983.

While it has been assumed that Dr. Singson, the prison physician, was a "state actor," the same cannot necessarily be said about Dr. Borcheat. Unlike Dr. Singson, it does not appear that Dr. Borcheat was employed by either the LDOC or the prison, and, further, it does not appear that Borcheat ever treated the plaintiff at SHRC. (Compare, *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), in which the Court held that a physician under contract with the state to furnish medical services to state prison inmates was acting under color of state law when he treated inmates within the confines of the prison.)

Thus, it does not appear that Dr. Borcheat was a "state actor" and therefore any claims against him should be dismissed as frivolous.

## *2. Deliberate Indifference Standard*

Nevertheless, even if Borcheat were to be considered a "state actor," plaintiff's supplemental claims against both him and Dr. Singson would be subject to dismissal for the reasons given in the original Report and Recommendation. As noted in that Report and Recommendation, medical care claims asserted by convicted prisoners, like plaintiff, must be analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs."

4

*Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) <u>the officials' response indicated that they subjectively intended that harm occur.</u> *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59 (emphasis supplied). "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a <u>negligent</u> or even a <u>grossly negligent</u> response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff's Supplemental Complaint has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that either Borcheat or Singson were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that these defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not Borcheat and Singson "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since, as shown above, "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's allegations of fact have been accepted as true for the purposes of this Report. The complaint reveals that on each occasion that plaintiff complained about a medical condition to the defendants, he was afforded some medical treatment.

Plaintiff, of course, disagrees with the diagnoses made by the defendants and the efficacy of the treatment provided; however, his disagreement with diagnosis and treatment is insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). Finally, plaintiff's theories of liability with respect to Borcheat and Singson are also fatal to his claims.[3]

In short, the facts alleged herein, taken as true for the purposes of this Supplemental Report, do not establish that either Dr. Borcheat or Dr. Singson were deliberately indifferent to plaintiff's serious medical need. Plaintiff's claims are therefore frivolous and dismissal of his Supplemental Complaint on that basis is recommended.

**IT IS RECOMMENDED THAT** plaintiff's Supplemental Civil Rights Complaint [doc.

---

[3] Plaintiff, for example, suggests that the physicians "should have" given him a blood test, and "should have" diagnosed his condition earlier, and "should have" prescribed more effective medication. At best, plaintiff's claims suggest negligence on the part of the treating physicians, and, as shown above, negligence, even gross negligence does not support a finding of §1983 liability. *Thompson*, 245 F.3d at 459.

16] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 6th day of November, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE